IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Rachel Black,

    Plaintiff,

v.

State of Ohio Industrial Commission, *et al.*,

    Defendants.

Case No: 2:21-cv-2987

Judge Graham

Magistrate Judge Jolson

<u>Opinion and Order</u>

    Plaintiff Rachel Black, proceeding *pro se*, brings this action against her employer, the State of Ohio Industrial Commission, and Chairman James Hughes and Executive Director Timothy Adams. Ms. Black, who is Hispanic, asserts claims under Title VII of the Civil Rights Act of 1964 for national origin discrimination and gender discrimination. She also asserts a claim under the Equal Pay Act.

    This matter is before the Court on defendants' motion to partially dismiss the claims. Plaintiff did not respond to the motion. Defendants argue that to the extent the complaint can be construed to assert a hostile work environment claim, any such claim fails because plaintiff did not include allegations of a hostile work environment in the Charge she filed with the Equal Employment Opportunity Commission. Defendants additionally argue that the Equal Pay Act claim fails because it is time-barred and because payroll records show that plaintiff earned more than her male counterpart.

I.

    The Second Amended Complaint alleges that Ms. Black began her employment with the Ohio Industrial Commission as an attorney in 1993. After serving as a District Hearing Officer for many years, she was appointed to Chief Legal Counsel in 2013.

    On July 1, 2019, Governor Michael DeWine appointed defendant Hughes to the position of Chairman of the Commission. According to plaintiff, Hughes attempted to terminate her employment on July 25, 2019 without cause and claimed that he wanted to go in a "new direction." Plaintiff immediately asserted her "fall-back rights" to return to her previous position as a hearing officer. Hughes claimed that plaintiff did not have fall-back rights.

1

After reporting the matter to Human Resources, plaintiff received a hearing officer position on July 29, 2019. Plaintiff alleges that the pay and other terms and conditions of her employment as a hearing officer were unfavorable in comparison to her employment as Chief Legal Counsel.

Plaintiff filed a charge with the Equal Employment Opportunity Commission on July 21, 2020 and received a Right to Sue letter on March 2, 2021. Plaintiff filed her complaint in this case on June 1, 2021. She has twice been granted leave to amend her complaint.

Counts I and II of the Second Amended Complaint assert claims of national origin discrimination under state law (Count I) and Title VII, 42 U.S.C. § 2000e-2(a) (Count II).

Counts III and IV assert claims of gender discrimination under Title VII (Count III) and state law (Count IV).

The complaint alleges that defendants discriminated against plaintiff by terminating her position as Chief Legal Counsel, by initially refusing to honor her fall back rights, and by treating her less favorably than non-Hispanic, male employees in the terms and conditions of employment.

Count V asserts a violation of the Equal Pay Act, 29 U.S.C § 206(d)(1). The complaint alleges that plaintiff was paid less and received fewer benefits than her white male counterparts.

II.

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court should construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. *Iqbal,* 556 U.S. at 679; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Twombly*, 550 U.S. at 555-56.

III.

A.

Defendants move to dismiss any claims under Counts II and III which could be construed as asserting the existence of a hostile work environment. It is unclear from the face of the complaint whether plaintiff intended to assert a hostile work environment claim, and plaintiff has not responded to defendants' motion to dismiss.

The complaint contains allegations relating to Jacob Bell, a non-defendant who worked for the Ohio Industrial Commission in some unspecified capacity. In 2015, Mr. Bell allegedly screamed

at plaintiff behind a locked door for fifteen minutes. Plaintiff reported the incident to a supervisor and said she felt intimidated, but no disciplinary action was taken against Mr. Bell. At about the same time, Mr. Bell allegedly used racial derogatory terms in referring to plaintiff's Puerto Rican descent. The complaint further alleges that Mr. Bell's employment was later terminated following an investigation into reports that he had harassed and created a hostile work environment for female employees.[1]

The basis for defendants' motion to dismiss any potential hostile work environment claim is that plaintiff did not exhaust her administrative remedies. Defendants argue that plaintiff's EEOC Charge did not contain any allegations relating to a hostile work environment.

"[A]n employee alleging employment discrimination in violation of [Title VII] must first file an administrative charge with the EEOC within a certain time after the alleged wrongful act or acts." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) (citing 42 U.S.C. § 2000e–5(e)(1)); *see also Scott v. Eastman Chem. Co.*, 275 Fed. App'x 466, 470 (6th Cir. 2008) ("As a prerequisite to bringing suit under Title VII, a claimant must exhaust his or her administrative remedies."). The charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). "This rule serves the dual purpose of giving the employer information concerning the conduct about which the employee complains, as well as affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion." *Younis*, 610 F.3d at 361.

The exhaustion requirement "is not meant to be overly rigid, nor should it result in the restriction of subsequent complaints based on procedural technicalities or the failure of the charges to contain the exact wording which might be required in a judicial pleading." *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006) (internal quotation marks omitted). An EEOC charge should be construed to encompass all claims "'reasonably expected to grow out of the charge of discrimination." *Haithcock v. Frank*, 958 F.2d 671, 675 (6th Cir. 1992)); *see also Younis*, 610 F.3d at 362 ("[C]ourts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge."). Thus, "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998).

---

[1] Viewing the Second Amended Complaint as a whole, the Court believes that plaintiff likely included the allegations as to Mr. Bell not for the purpose of asserting a hostile work environment claim, but in order to emphasize that Hughes acted unreasonably in July 2019 when he insisted to plaintiff that Mr. Bell should be given his job back.

3

Plaintiff's EEOC Charge contains no assertion of a hostile work environment claim, nor does it mention facts from which a hostile work environment claim could reasonably be expected to grow.  The Charge consists of a chronological narrative which begins with July 25, 2019, the date on which Hughes terminated plaintiff's employment as Chief Legal Counsel and rejected plaintiff's assertion of fall-back rights.  The Charge moves next to July 29, when plaintiff's fall-back rights were honored.  The Charge then details events occurring from August to October 2019 regarding the terms and conditions of plaintiff's employment, including an unfavorable office location and the lack of access to email and computer files.

To the extent the Second Amended Complaint can be construed as alleging a hostile work environment, those allegations relate to events which occurred in 2015 and involved Mr. Bell.  The EEOC Charge was limited to unrelated events which took place from July to October 2019.  The Charge did not mention Mr. Bell.

Accordingly, the Court dismisses any hostile work environment claims relating to the 2015 incidents with Mr. Bell.

B.

Defendants argue that the statute of limitations bars all or nearly all of plaintiff's Equal Pay Act claim.  Claims must be filed within two years after the cause of action accrues or within three years if the violation was "willful."  29 U.S.C. § 255(a).

The Second Amended Complaint alleges that plaintiff, as Chief Legal Counsel, did not receive pay equal to her white male counterparts, including the individual who replaced her in that position.  Plaintiff was removed as Chief Legal Counsel on July 25, 2019.  She filed suit on June 1, 2021.

The Court finds that plaintiff may proceed with her Equal Pay Act claim for two reasons.  First, the Act "is violated each time an employer presents "an 'unequal' paycheck to an employee for equal work."  *Gandy v. Sullivan Cnty.*, 24 F.3d 861, 864 (6th Cir. 1994).  At a minimum, plaintiff may pursue a claim for any pay she should have received for work performed from June 1, 2019 to July 25, 2019.  *See id.* ("[A] cause of action may be brought for any or all violations occurring within the limitations period . . . immediately prior to commencement of the action."); *Moten v. Am. Linen Supply Co.*, No. 93-4189-SAC, 1995 WL 106340, at *7 (D. Kan. Jan. 24, 1995) ("[T]he relevant question is whether the plaintiff was paid less on account of her sex anytime within the limitations period.").  Second, the Complaint expressly alleges that defendants willfully violated plaintiff's rights, and thus, taking this allegation as true, a three-year statute of limitations applies.

4

Defendants next argue that the Equal Pay Act claim fails because their payroll records show that plaintiff earned more than the individual, Jim Burkart, who replaced her. In support, defendants submit certain payroll records and an affidavit from defendants' payroll coordinator, who attests to the authenticity of the records.

Defendants recognize that the payroll records are outside of the pleadings. Nonetheless, they assert that the Court may consider them at the motion to dismiss stage because they are a matter of public record. *See State ex rel. Petty v. Wurst*, 49 Ohio App. 3d 59, 61, 550 N.E.2d 214, 217 (1989) (holding that salary rate and gross compensation of a civil servant was not exempted from disclosure under Ohio's Public Records Law, O.R.C. § 149.43). *See also Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (stating that a court may take notice of public records when considering a Rule 12(b)(6) motion).

The Court finds that even if the payroll records may be considered at this stage, it would be premature to dismiss plaintiff's claim. It is true, as defendants point out, that Mr. Burkart initially earned less ($56.00 per hour) than what plaintiff earned at the time of her termination ($58.82). However, the payroll records also support one of plaintiff's allegations: that within six months on the job Mr. Burkart had advanced to a rate for which it took plaintiff five years to reach. The inquiry into whether an employer has violated the Equal Pay Act is multi-factored and includes considerations such as skill, qualifications, seniority, effort, and quality of job performance. *See Schleicher v. Preferred Sols., Inc.*, 831 F.3d 746, 752–53 (6th Cir. 2016). Plaintiff has plausibly alleged that defendants violated the Act by paying her at a lesser rate than what a male with the same qualifications, seniority, and experience would have received.

Accordingly, the Court denies the motion to dismiss as it relates to Count V.

IV.

For the reasons stated above, defendants' motion to dismiss (doc. 36) is GRANTED IN PART and DENIED IN PART.

                                                s/ James L. Graham
                                                JAMES L. GRAHAM
DATE: September 22, 2022               United States District Judge